1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHARLES RODRIGUEZ,                    No.  2:14-CV-02061-KJM-CKD
     individually and on behalf of all
12   similarly situated current and former
     employees,
13                                          ORDER

14                  Plaintiff,

15         v.

16   PENSKE LOGISTICS, LLC, a
     Delaware Limited Liability Company,
17   and DOES 1 through 10, inclusive

18                  Defendant.

19

20          Plaintiff Charles Rodriguez seeks to represent a class of current and former

21   employees of defendant Penske Logistics, LLC ("Penske"), whose "pay-by-the-mile"

22   compensation policy he says deprived them of payment for rest periods and other non-productive

23   time. *See generally* Compl., ECF No. 1.  This action is before the court on Rodriguez's motion

24   for preliminary certification of the class, preliminary approval of the settlement and approval of

25   the proposed notice to the putative class.  Mot. Prelim. Approval (Mot.), ECF No. 27.  The

26   motion is unopposed.  The court held a hearing on December 16, 2016, at which Aashish Y.

27   Desai appeared for Rodriguez and Megan Ross appeared for Penske.  ECF No. 35.  For the

28   reasons described below, the court GRANTS the motion.

                                              1

1    I.     BACKGROUND

2           A.     Rodriguez's Employment and Claims

3                  Rodriguez worked as a driver for Penske for nearly fifteen years before his

4    separation from the company in July 2013.  Compl. ¶ 13.  During that time, Rodriguez worked as

5    a non-exempt employee, paid on a "by-the-mile" or "piece rate" basis.  *Id.*  In this action,

6    Rodriguez alleges Penske did not pay for pre- and post-trip inspections, nor did its piece rate

7    method of payment account for ten-minute rest breaks that should have been compensated.  *Id.*

8    Rodriguez further alleges he was subject to policies that did not permit him to be relieved of all

9    duties during break periods; was subject to an improper accounting policy; was not paid premium

10   wages, or at least minimum wage, for non-compliant break periods; was provided inaccurate

11   itemized wage statements for which the basis for pay and calculation could not be performed by a

12   reasonable person; and was not timely paid all wages owed and due upon separation.  *Id.*

13                 Based on these allegations, Rodriguez brings the following eight claims on behalf

14   of the putative class: (1) failure to pay minimum wages, Cal. Lab. Code §§ 510, 1194; (2) failure

15   to provide paid 10-minute rest periods, *id.* § 226.7; (3) failure to provide duty-free rest periods or

16   compensation in lieu thereof, *id.*  §§ 226.7, 512; (4) failure to provide duty-free meal periods or

17   compensation in lieu thereof, *id.* §§ 226.7, 512; (5) knowing and intentional failure to provide

18   itemized wage statements, *id.* § 226(a)–(b); (6) failure to pay wages at termination, *id.* §§ 201–

19   203; (7) violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–08; and

20   (8) violations of the Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698, *et seq.*

21   *See* Compl. ¶¶ 41–80.

22                 Rodriguez seeks conditional certification of the following class:

23                 All California-based non-exempt truck driver employees who
                   worked under a 'piece rate' or 'pay-by-the-mile' compensation
24                 policy from September 5, 2010 through to the earlier of
                   (a) Preliminary Approval of the Court or (b) November 1, 2016.
25

26   Mot. at 7.  Although the complaint proposed subclasses corresponding to each of the first seven

27   claims in the complaint, *see* Compl. at 25–31, Rodriguez here seeks certification only of the

28   /////

                                                 2

1    broader class described above.  The parties have stipulated to the existence of that class for

2    purposes of settlement.  Mot. at 7.

3           B.      Procedural History

4           Rodriguez filed the complaint on September 5, 2014.  In January 2015, the court

5    issued an initial scheduling order, which created a cut-off for dispositive motions to be heard no

6    later than June 16, 2016.  ECF No. 20.  After neither of the parties timely filed a dispositive

7    motion, the court advanced the date of the final pretrial conference.  ECF No. 21.  The parties

8    asked for additional time in light of their pending negotiations, which the court granted.  ECF

9    Nos. 22–23.  On October 3, 2016, the parties filed a joint notice of settlement.  ECF No. 25.  On

10   November 16, 2016, Rodriguez filed the motion considered here.  *See* Mot.

11          C.      Assembly Bill 1513

12          This case must be understood in the context of a relatively recent change in state

13   law.  Rodriguez filed this action in light of state court decisions that held a failure to pay

14   employees for time spent performing tasks other than those paid on a piece-rate basis violated

15   California law.  *See Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864 (March 8, 2013);

16   *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36 (March 6, 2013).  On October 10,

17   2015, Governor Jerry Brown signed California Assembly Bill 1513 ("AB 1513"), which not only

18   codified the law as articulated by California courts, but also created an affirmative defense for

19   employers.  Cal. Lab. Code § 226.2; *see Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 812–

20   13 (9th Cir. 2016) (explaining how section 226.2's "safe harbor" period was enacted to protect

21   employers from unforeseen liability arising from *Gonzalez* and *Bluford*).  An employer can avail

22   itself of this affirmative defense if it pays employees either (a) the amount it owes plus interest or

23   (b) four percent of the W-2 reported wages of the worker from July 1, 2012 through December

24   31, 2015.  *Id.* § 226.2(b).  Because the affirmative defense affects many of Rodriguez's claims,

25   and because the "safe harbor" period substantially overlaps with the putative class period here,

26   the adoption of AB 1513 significantly reduced the value of the claims.  *See* Desai Decl. ¶ 8, ECF

27   No. 27-2 ("Simply put, the 'safe harbor' provision under AB 1513 gut[ted] this case,

28

considerably."). It is with this backdrop that the court preliminarily evaluates the putative class and the proposed settlement agreement.

II.     LEGAL STANDARD

"Courts have long recognized that 'settlement class actions present unique due process concerns for absent class members.'" *In re Bluetooth Headset Prods. Liab. Litig. (Bluetooth)*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In settlement classes, the class's motivations may not perfectly square with those of its attorneys. *See id.* An attorney representing a settlement class may be tempted to accept an inferior settlement in return for a higher fee. *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002). Likewise, defense counsel may be happy to pay his counterpart a bit more if the overall deal is better for his client. *See id.* In addition, if the settlement agreement is negotiated before the class is certified, as it was in this case, the potential for an attorney's breach of fiduciary duty looms larger still. *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013).

To protect absent class members' due process rights, Rule 23(e) of the Federal Rules of Civil Procedure permits a class action to be settled "only with the court's approval" "after a hearing and on a finding" that the agreement is "fair, reasonable, and adequate." Each of these words must have meaning: a fair settlement treats all class members equitably; a reasonable settlement has its basis in analysis; and an adequate settlement compensates class members for the wrongs they suffered. *See Bluetooth*, 654 F.3d at 946 (listing facets of the court's fairness assessment and describing motivations for the court's inquiry). When settlement is hashed out before class certification, a motion for class certification "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts." *Id.* (citations omitted). "Judicial review must be exacting and thorough." Manual for Complex Litigation, Fourth (MCL) § 21.61 (2004).

As the Ninth Circuit has recognized, however, the "governing principles may be clear, but their application is painstakingly fact-specific," and the court normally stands as only a spectator to the parties' bargaining. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "Judicial review also takes place in the shadow of the reality that rejection of a settlement creates

not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Id.* Federal courts have long recognized "[a] strong judicial policy favors settlement of class actions." *Adoma v. Univ. of Phoenix, Inc.*, 913 F Supp. 2d 964, 972 (E.D. Cal. 2012) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

As a functional matter, a "[r]eview of a proposed class action settlement generally involves two hearings." MCL § 21.632. First, the parties submit the proposed terms of the settlement so the court can make "a preliminary fairness evaluation," and if the parties move "for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined." *Id.* Then, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and the date of the final fairness hearing." *Id.* Notification is the most important consequence of preliminary approval. *See* Newberg on Class Actions (Newberg) § 13:13 (5th ed. 2011). After the initial certification and notice to the class, the court conducts a second fairness hearing before finally approving any proposed settlement. *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1267 (9th Cir. 2010).

Here, the court undertakes the first, preliminary step only. Rule 23 provides no guidance, and actually foresees no such procedure, but federal courts have generally adopted some version of the following test: "Preliminary approval of a settlement and notice to the proposed class is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval.'" *Lounibos v. Keypoint Gov't Solutions Inc.*, No. 12-00636, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *accord* Newberg § 13:13; MCL § 21.632 & n.976.

With these principles in mind, the court turns to Rodriguez's motion.

1  III.  DISCUSSION

2         The court first considers the propriety of a class action, then reviews the terms of

3  the parties' settlement agreement.

4         A.  Class Certification

5         Although the parties in this case have stipulated to conditional certification of the

6  class, the court must nevertheless undertake the Rule 23 inquiry independently, both at this stage

7  and at the later fairness hearing. *West v. Circle K Stores, Inc.*, No. 04-0438, 2006 WL 1652598,

8  at *1–2 (E.D. Cal. June 13, 2006) (citing, *inter alia*, *Amchem Prods., Inc. v. Windsor*, 521 U.S.

9  591, 622 (1997)).

10        Litigation by a class is "an exception to the usual rule" that only individually

11  named parties bring and conduct lawsuits. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

12  To be eligible for certification, the proposed class must be "precise, objective, and presently

13  ascertainable." *Williams v. Oberon Media, Inc.*, No. 09-8764, 2010 WL 8453723, at *2 (C.D.

14  Cal. Apr. 19, 2010), *aff'd*, 468 F. App'x 768 (9th Cir. 2012). The requirement is a practical one.

15  It is meant to ensure the proposed class definition will allow the court to efficiently and

16  objectively ascertain whether a particular person is a class member, *In re TFT-LCD (Flat Panel)*

17  *Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010), for example, so each putative class

18  member can receive notice, *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal.

19  1998).

20        If a putative class may be ascertained, it must then meet both the threshold

21  requirements of Rule 23(a) and the requirements of one of the subsections of Rule 23(b).

22  *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Rule 23(a) imposes four

23  requirements on every class. First, the class must be "so numerous that joinder of all members is

24  impracticable." Fed. R. Civ. P. 23(a)(1). Second, questions of law or fact must be common to the

25  class. Fed. R. Civ. P. 23(a)(2). Third, the named representatives' claims or defenses must be

26  typical of those of the class. Fed. R. Civ. P. 23(a)(3). And fourth, the representatives must "fairly

27  and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

28

1   Here, Rodriguez seeks preliminary certification under Rule 23(b)(3).  Mot. at 15.

2   Rule 23(b)(3) imposes two requirements in addition to those of Rule 23(a): first, "that the

3   questions of law or fact common to class members predominate over any questions affecting only

4   individual members," and second, "that a class action is superior to other available method[s] for

5   fairly and efficiently adjudicating the controversy."  The test of Rule 23(b)(3) is "far more

6   demanding" than that of Rule 23(a).  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

7   1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

8           Rule 23 applies just as well to an uncontested settlement class as to a contested

9   class that goes to trial: "Settlement, though a relevant factor, does not inevitably signal that class-

10  action certification should be granted more readily than it would be were the case to be litigated.

11  . . . [P]roposed settlement classes sometimes warrant more, not less, caution on the question of

12  certification."  *Amchem*, 521 U.S. at 620 n.16 (citation omitted).  When faced with a motion to

13  certify a settlement class, the court must pay "undiluted, even heightened, attention" to Rule 23's

14  provisions.  *Id.* at 620.  Moreover, the approval process runs the risk of becoming a rubberstamp.

15  Motions to certify a settlement class are generally unopposed, as is this one.  The court hears

16  argument only in favor of certification.  *See Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL

17  1793774, at *1 (N.D. Cal. June 19, 2007) ("Once the named parties reach a settlement in a

18  purported class action, they are always solidly in favor of their own proposal.  There is no

19  advocate to critique the proposal on behalf of absent class members.").  The court is often left to

20  the plaintiff's argument and its own devices.  The problem is greater at this preliminary approval

21  stage, where objectors are unlikely to have already appeared.

22          Federal courts have not provided consistent guidance on the specific Rule 23

23  standard a plaintiff must satisfy on a motion for preliminary approval; despite the Supreme

24  Court's cautions in *Amchem*, *see* 521 U.S. at 620 n.16, a cursory approach appears the norm.  *See*

25  Newberg § 13:18 & n.10.  To look at the question of an appropriate standard from a practical

26  point of view, if a district court concludes a class may be certified, even conditionally or

27  preliminarily, and if the parties' proposed agreement is fair upon preliminary review, notice will

28  be sent to potential class members.  *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in

1    a reasonable manner to all class members who would be bound by the proposal [of settlement].").

2    The danger of an incorrect decision on a motion for preliminary approval and certification is

3    therefore the risk of unnecessary or erroneous class notice: confusion and waste. If the class is

4    eventually not certified, the previously sent notice will have been a waste, or if the class is later

5    redefined, a revised notice must be sent, which may confuse potential class members. *Cf., e.g.*,

6    *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94 (D.D.C. 2012) (the risk of

7    unnecessary notice may call for a stay pending review under Rule 23(f)); *accord* Newberg

8    § 13:10 ("[S]ending notice to the class costs money and triggers the need for class members to

9    consider the settlement, actions which are wasteful if the proposed settlement is obviously

10    deficient from the outset."). For these reasons, Rodriguez bears the burden of persuasion that

11    class notice will not lead to confusion or waste.

12           With these observations in mind, the court reviews each of Rule 23's

13    requirements.

14           1.    Existence of a Class

15           As noted above, the proposed class consists of "[a]ll California-based non-exempt

16    truck driver employees who worked under a 'piece rate' or 'pay-by-the-mile' compensation

17    policy." Mot. at 7. The class is time-constrained, covering drivers who worked from

18    September 5, 2010 through November 1, 2016. *Id.* Rodriguez estimates this class encompasses

19    723 California drivers, 57 of whom were hired after January 1, 2016. Desai Decl. ¶ 5. The class

20    is precise, objective and presently ascertainable.

21           2.    Numerosity

22           To be certified, a class must be "so numerous that joinder of all members is

23    impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but

24    only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs*

25    *Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964) (quoting *Advers. Specialty Nat. Ass'n v.*

26    *FTC*, 238 F.2d 108, 119 (1st Cir. 1956)). Although the Supreme Court has held that "[t]he

27    numerosity requirement . . . imposes no absolute limitations," *Gen. Tel. Co. of the Nw., Inc. v.*

28    *EEOC*, 446 U.S. 318, 330 (1980), courts generally find this requirement satisfied when a class

includes at least forty members, *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (unpublished) (citing *EEOC v. Kovacevich "5" Farms*, No. 06–165, 2007 WL 1174444, at \*21 (E.D. Cal. Apr. 19, 2007)).  Here, the proposed class is sufficiently numerous.  Joinder of more than 700 plaintiffs would prove impracticable.  Mot. at 16.  Much smaller classes have been certified.  *See, e.g.*, *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (collecting authority to show that classes of fewer than one hundred members may be certified); *cf. Gen Tel. Co. Nw.*, 446 U.S. at 330 (a class of fifteen would be too small).

                3.       <u>Adequacy</u>

         To determine whether the named plaintiff will protect the interests of the class, the court must explore two factors: (1) whether the named plaintiff and his counsel have any conflicts of interest with the class as a whole, and (2) whether the named plaintiff and counsel have vigorously pursued the action on behalf of the class.  *Hanlon*, 150 F.3d at 1020.  Nothing in the record here suggests Rodriguez faces any conflicts of interest with any other class members.  Rodriguez's counsel is an experienced class litigator, Desai Decl. ¶¶ 9–13, and the record reveals no conflicts of interest with the putative class.  Rodriguez and class counsel have no apparent conflicts of interest with the class as a whole.

         Whether Rodriguez has vigorously pursued the action presents a more nuanced question.  On one hand, the docket in this case is sparse.  In the two years between filing this case and settling, Rodriguez did not file any discovery-related motions or any dispositive motions.  On the other hand, class counsel argues his discovery, investigation and prosecution included the following: multiple telephonic conferences with plaintiff; inspection of hundreds of pages of documents produced by the parties; analysis of defendant's legal positions; investigation into the viability of class treatment of the claims; and analysis of potential class-wide damages, including information sufficient to understand defendant's potential defense under new Labor Code section 226.2.  Mot. at 4.

         As class counsel explains, the relative inactivity in this case is largely due to the pendency and then passage of AB 1513.  *See* Mot. at 6–7; Desai Decl. ¶¶ 4–8, 19; Suppl. Desai Decl. at 2–3, ECF No. 38.  Because AB 1513's affirmative defense affects many of plaintiff's

1  claims, and because the "safe harbor" period substantially overlaps with the putative class period

2  here, AB 1513 once passed significantly reduced the value of the claims. *See* Desai Decl. ¶ 8. As

3  he explained at hearing, class counsel closely monitored the proposed drafts of AB 1513 and was

4  even involved in efforts related to the passing of the bill in October 2015. After AB 1513 was

5  signed, counsel engaged in informal, "self-mediated" efforts with defendant to analyze the impact

6  of AB 1513 on the claims, evaluate the cost to defendant to take advantage of the affirmative

7  defense, and to ultimately reach settlement once defendant indicated its intent to take advantage

8  of the affirmative defense. Given this unique backdrop, the court finds Rodriguez and class

9  counsel sufficiently pursued the action on behalf of the class, and the court is persuaded they will

10  adequately protect the interests of the class.

11                    4.        Commonality, Typicality and Predominance

12            Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ.

13  P. 23(a)(2). Common questions exist where putative class members suffer the same injury, *Gen.*

14  *Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982), such that simultaneous litigation is

15  productive, *Wal-Mart*, 564 U.S. at 350. "This does not mean merely that [putative class

16  members] have all suffered a violation of the same provision of law." *Id.* Rather, the claims

17  "must depend upon a common contention" the nature of which "is capable of classwide

18  resolution." *Id.* Common litigation must "resolve an issue that is central to the validity of each

19  one of the claims in one stroke." *Id.* Although just one common question could suffice to

20  establish commonality, *id.* at 2556, the true inquiry is into "the capacity of a classwide proceeding

21  to generate common *answers* apt to drive the resolution of the litigation," *id.* at 2551 (emphasis in

22  original) (citation and internal quotation marks omitted). "Dissimilarities within the proposed

23  class[, however,] . . . have the potential to impede the generation of common answers." *Id.*

24  (citation and internal quotation marks omitted).

25            Here, the parties agree the class is subject to common compensation policies. Mot.

26  at 16. Whether each of those policies violates California law presents several common questions,

27  and the class therefore satisfies the requirement of commonality.

28

1     Typicality, like commonality, acts as a guidepost "for determining whether . . . a

2    class action is economical and whether the named plaintiff's claim and the class claims are so

3    interrelated that the interests of the class members will be fairly and adequately protected in their

4    absence.'" *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *Falcon*, 457 U.S. at 157–58 n.13 (1982)).  A

5    court resolves the typicality inquiry by considering "whether other members have the same or

6    similar injury, whether the action is based on conduct which is not unique to the named plaintiffs,

7    and whether other class members have been injured by the same course of conduct." *Ellis v.*

8    *Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotations and citation

9    omitted).  Here, the court is satisfied that assuming common questions exist, Rodriguez's claims

10   are typical of the class.  He and each class member were allegedly employed in the same position

11   at roughly the same time.  He and each class member were allegedly subjected to the same

12   policies regarding compensation, meal and rest periods and reimbursement for expenses.

13   Rodriguez is sufficiently typical of the class.

14           After establishing typicality and the existence of common questions of law or fact,

15   Rodriguez must also establish that common questions "predominate over any questions affecting

16   only individual members." Fed. R. Civ. P. 23(b)(3).  "The predominance analysis under Rule

17   23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and

18   'tests whether proposed classes are sufficiently cohesive to warrant adjudication by

19   representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting

20   *Hanlon*, 150 F.3d at 1022).  Courts are required "to take a 'close look' at whether common

21   questions predominate over individual ones." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)

22   (citations and quotation marks omitted).

23           Here, despite the many common questions present in this case, the court identified

24   several issues at hearing, all regarding the impact of AB 1513, that could potentially undermine

25   the cohesiveness of the class. *See* December 27, 2016 Order, ECF No. 37 (instructing

26   supplemental briefing on targeted questions); Suppl. Desai Decl.  For example, because the class

27   period runs from September 5, 2010 to November 1, 2016, while the safe harbor period runs from

28   July 1, 2012 through December 31, 2015, the court asked counsel whether employees that worked

1 | outside the safe harbor period should be compensated differently. Counsel confirmed AB 1513

2 | does not impact the value of claims tied to work done outside the safe harbor period, but

3 | nonetheless supports a single class definition. Suppl. Desai Decl. at 2–3. Counsel also explains

4 | defendant switched to an hourly, rather than piece rate, pay plan on January 1, 2016, Desai Decl.

5 | ¶ 6, and so the value of the claims for work done between January 1 and November 1, 2016 may

6 | be undermined by defendant's change in policy rather than AB 1513.

7 | The court is persuaded that these differences in the two time periods do not

8 | significantly undermine the predominance of common issues. The issues do not create

9 | individualized inquiries but instead raise questions pertaining to the amount of damages

10 | employees may recover based on when they worked for defendant. And "[t]he amount of

11 | damages is invariably an individual question and does not defeat class action treatment."

12 | *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) (quoting *Blackie v.*

13 | *Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)). Defendant's policies present several questions

14 | common to the class that predominate over any individualized inquiry. Rodriguez has established

15 | predominance.

16 | 5. Superiority

17 | Rule 23(b)(3) requires the court to find a class action is the "superior" method of

18 | resolution. Fed. R. Civ. P. 23(b)(3). This constraint should lead the court "to assess the relative

19 | advantages of alternative procedures for handling the total controversy." *Id.* advisory comm.

20 | notes to 1966 amendment. Rule 23(b)(3) provides that superiority is determined by considering,

21 | for example,

22 | (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

23 |

24 | (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

25 | (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

26 |

27 | /////

28 | /////

1    (D) the likely difficulties in managing the class action.

2    *Id.*; *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190–92 (9th Cir. 2001).  A

3    settlement class will not reach trial, however, so the inquiry is somewhat tempered:

4            Confronted with a request for settlement-only class certification, a
         district court need not inquire whether the case, if tried, would
5        present intractable management problems, for the proposal is that
         there be no trial.  But other specifications of the Rule—those
6        designed to protect absentees by blocking unwarranted or
         overbroad class definitions—demand undiluted, even heightened,
7        attention in the settlement context.

8    *Amchem*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

9            The question of superiority encompasses several concerns distinct from the other

10   requirements of Rule 23(a) and (b)(3).  It contemplates the "vindication of the rights of groups of

11   people who individually would be without effective strength to bring their opponents into court at

12   all."  *Id.* at 617 (citation and internal quotation marks omitted).  It considers the existence and

13   effect of other related lawsuits, *Zinser*, 253 F.3d at 1191, and whether this court is the right

14   forum, Fed. R. Civ. P. 23(b)(3)(C).  And most basically, the court must assure itself that no

15   realistic alternative process would better serve the class members' interests.  *See Valentino v.*

16   *Carter–Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996); 7A Charles A. Wright, et al.,

17   Federal Practice & Procedure § 1779 (3d ed. 2005) (individual litigation, joinder, multidistrict

18   litigation or an administrative or other non-judicial solution may be superior).

19           Here, the court is satisfied that a class action is superior to any alternative means

20   of vindicating the individual rights placed in issue by the complaint.  Defendant calculates it

21   would cost $775,272 to take advantage of the safe harbor provision for all California drivers,

22   Desai Decl. ¶ 5, which means the 723 putative class members would receive an average payment

23   of just over $1,000 each.  This amount would be too small to incentivize individual litigation.

24   Meanwhile, mass joinder of over seven hundred drivers would be impracticable.  The court is not

25   aware of any overlapping pending lawsuits.

26           AB 1513's safe harbor provisions create an administrative procedure that could

27   provide an alternative means of redress.  Cal. Lab. Code § 226.2(b)(1)–(5).  In order to trigger the

28   affirmative defense, an employer must:  make payments to current and former employees using

                                              13

1    either payment formula, *id.* § 226.2(b)(1); provide notice of payment to employees through the

2    Department of Industrial Relations, *id.* § 226.2(b)(3); and begin making payments "as soon as

3    reasonably feasible" after notice is given and complete making payments by December 15, 2016,

4    *id.* § 226.2(b)(4).  Here, however, defendant settled with plaintiff in lieu of taking advantage of

5    this procedure.  From the defendant's perspective, that is because the settlement provides closure

6    for more claims than AB 1513 reaches.  From the class's perspective, more importantly, class

7    members stand to receive substantially more from defendant than under the new administrative

8    procedure to compensate for the other claims.  In any event, it is not clear how the putative class

9    would compel defendant to pay class members under AB 1513 absent the threat of this very

10   action.  Thus, although AB 1513 provides an alternative means of redress for the impacted

11   claims, the court is persuaded that class treatment of this action is superior because it resolves,

12   and compensates for, all of the class claims.

13                    6.      Conclusion

14           The court finds, with the benefit of its discussion with counsel at hearing and

15   counsel's supplemental declaration, that the class has sufficiently satisfied the requirements for

16   certification under Rule 23(a) and 23(b)(3) such that publication of class notice is unlikely to lead

17   to confusion or waste.

18           B.      Preliminary Fairness Determination

19           The court now considers whether the proposed settlement appears to be "the

20   product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

21   improperly grant preferential treatment to class representatives or segments of the class, and falls

22   within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079

23   (citations and quotation marks omitted).

24                    1.      The Proposed Settlement Agreement

25           Under the proposed agreement, defendant agrees to pay a Gross Settlement

26   Amount of $850,000 for all claims.  Mot. at 7; Settlement Agreement at 10, ECF No. 27-1.  The

27   agreed $850,000 will be defendant's total payment, Mot. at 7, which will be used to pay the

28   following: (1) the Attorney Fees, not to exceed $255,000 or 30 percent of the Settlement Amount,

                                                    14

1   and Expenses not to exceed $10,000; (2) the Service Fee Award, as approved by the court, not to

2   exceed $3,000; (3) the Administrative Expenses, as approved by the court, not to exceed $25,000;

3   (4) a $10,000 PAGA award, to be paid to the California Labor and Workforce Development

4   Agency ("LWDA") under California Labor Code § 2699(i); (5) the aggregate of all Individual

5   Settlement Amounts of Class Participants; (6) the Employee's Taxes and Required Withholding

6   associated with the Individual Settlement Amounts; and (7) the Employer's Taxes associated with

7   the portion of the Individual Settlement Amounts related to wages. *Id.* at 7–8.  The settlement

8   will be distributed to class members based on the number of weeks worked for defendant during

9   the relevant time period, after deducting the employee's taxes and required withholdings.  *Id.* at 8.

10          The settlement agreement contemplates a notice period for class members to opt

11   out of the settlement or to file an objection regarding its fairness.  *Id.* at 9–11.  A settlement

12   administrator will send a first proposed notice to all putative class members and then a second

13   should any of the first set be returned as undeliverable.  *Id.* at 9.  Once notice is sent out, class

14   members are automatically part of the settlement unless they opt out of the settlement by the

15   response deadline.  *Id.* at 9.  Class members may also file objections to the settlement and

16   subsequently appear at the second fairness hearing.  *Id.* at 11.  Notably, the settlement agreement

17   includes two safeguards should the number of settlement class members change.  First, if three

18   percent or more of the class timely opts out, then defendant has the exclusive right to void the

19   agreement.  *Id.* at 11.  Second, if the number of settlement class members exceeds 796

20   individuals, then the Gross Settlement Amount will be proportionally increased to reflect those

21   additional members.  *Id.*

22          In this case, defendant has stipulated that a class may be certified for settlement

23   purposes only but it denies "each and all of the allegations, claims, and contentions" brought by

24   Rodriguez and contends that it complied in good faith with California and federal wage and hour

25   laws.  Mot. at 5–6.

26          2.      Fairness, Reasonableness and Adequacy

27          As noted above, "[a]t this preliminary approval stage, the court need only

28   determine whether the proposed settlement is within the range of possible approval."  *Murillo*,

1 266 F.R.D. at 479 (internal quotations omitted). Several factors bear on the inquiry, including the

2 strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further

3 litigation; the risk of maintaining class action status throughout the trial; the amount offered in

4 settlement; the extent of discovery completed and the stage of the proceedings; the experience

5 and views of counsel; the presence of a governmental participant; and the reaction of the class

6 members to the proposed settlement. *Hanlon*, 150 F.3d at 1026. The court must also consider the

7 value of the settlement offer and whether the settlement is the result of collusion. *City of Seattle*,

8 955 F.2d at 1290.

9         At the preliminary approval stage, the "initial evaluation can be made on the basis

10 of information [contained in] briefs, motions, or informal presentations by parties," MCL

11 § 21.632, and "the [c]ourt need not review the settlement in detail . . . ." *Durham v. Cont'l Cent.*

12 *Credit, Inc.*, No. 07-1763, 2011 WL 90253, at *2 (S.D. Cal. Jan. 10, 2011) (citing Newberg

13 § 11.25). The court may not "'delete, modify or substitute certain provisions.'" *Hanlon*,

14 150 F.3d at 1026 (citations and quotation marks omitted). "The settlement must stand or fall in

15 its entirety." *Id.*

16         Here, the court's primary concern regarding the fairness of the settlement, as

17 discussed with the parties at hearing, regarded the impact of AB 1513 on the value of the class

18 claims. Plaintiff explains defendant would have to pay $775,272 to take advantage of the safe

19 harbor's four-percent-of-reported-wages option for all class members. Desai Decl. ¶ 5. The

20 question for the court is whether a Gross Settlement Amount of $850,000, which is approximately

21 ten percent more than the safe harbor amount, is fair to class members. The court finds

22 preliminarily that it is. As counsel has explained, "the 'safe harbor' provision under AB 1513

23 gut[ted] this case, considerably." Desai Decl. ¶ 8. Although AB 1513 does not impact all of

24 plaintiff's claims, it strikes at the core of the allegations that defendant did not pay for rest breaks

25 and non-productive time. Suppl. Desai Decl. at 1. Given the inherent risks involved in protracted

26 litigation, the court cannot say the additional amount would not fairly compensate members for

27 the non-impacted claims. Counsel asserts the proposed settlement is the result of rigorous

28

16

1    investigation and arm's length negotiations, and the court has no evidence before it that this is not

2    the case.  The settlement amount is within the range of possible approval.

3           C.     Notice

4                  For any class certified under Rule 23(b)(3), "the court must direct to class

5    members the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).

6    The notice must state in plain, easily understood language:

7                         (i) the nature of the action;

8                         (ii) the definition of the class certified;

9                         (iii) the class claims, issues, or defenses;

10                        (iv) that a class member may enter an appearance through an
                          attorney if the member so desires;
11
                          (v) that the court will exclude from the class any member who
12                        requests exclusion;

13                        (vi) the time and manner for requesting exclusion; and

14                        (vii) the binding effect of a class judgment on members under Rule
                          23(c)(3).
15

16   *Id.*  The court has reviewed the proposed notice, Settlement Agreement Ex. 1, ECF No. 27-1, and

17   finds it conforms with due process and Rule 23(c)(2)(B).  The proposed notice adequately

18   describes the terms of the settlement, informs the class about the allocation of attorneys' fees,

19   and, once completed, will provide specific and sufficient information regarding the date, time and

20   place of the final approval hearing.  *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d

21   1114, 1126–27 (E.D. Cal. 2009).  It informs recipients how they may object or opt out of the

22   proposed settlement.  The proposed mode of delivery, by mail, also appears appropriate in these

23   circumstances.

24          D.     Attorney Fees

25                 Although the court does not make any final determination regarding the requested

26   fees, the court notes plaintiff's intention to request $255,000 in attorney fees.  At the final

27   approval stage, plaintiff will have to justify this amount under a percentage-of-recovery theory or

28   a lodestar method.  *Bluetooth*, 654 F.3d at 942.

1    To the extent plaintiff intends to pursue a percentage-of-recovery theory, the

2    intended request of thirty percent of the Gross Settlement Amount is above the Ninth Circuit

3    twenty-five percent benchmark.  *See Hanlon*, 150 F.3d at 1029; *Ross v. U.S. Nat'l Bank Ass'n*,

4    No. 07–02951, 2010 WL 3833922, at *2 (N.D. Cal. Sept  29, 2010).  The Ninth Circuit has

5    provided guidance for a district court's evaluation of a request to adjust up from the benchmark.

6    *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).  At the final approval

7    stage, counsel will need to show why an upward adjustment is appropriate in these circumstances.

8           To the extent Rodriguez intends to pursue a lodestar method, the intended request

9    of $255,000 in attorney fees relies on hourly rates that may not be supportable here.  The court

10   must use a reasonable hourly rate, which is determined based on the "rate prevailing in the

11   community for similar work performed by attorneys of comparable skill, experience, and

12   reputation."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986).  The

13   "relevant legal community" for the purposes of the lodestar calculation is generally the forum in

14   which the district court sits.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013).

15   Plaintiff's hourly rates of $750 and $450 for the two attorneys that have worked on this case may

16   be unreasonable.  *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 374 (E.D. Cal. 2014)

17   (requested rates of $650 and $495 "are high for even the most experienced attorneys in the

18   Eastern District"); *Joe Hand Promotions, Inc. v. Albright*, Civ. No. 2:11–2260, 2013 WL

19   4094403, at *2 (E.D. Cal. Aug. 13, 2013) (citing Eastern District cases in which judges awarded

20   experienced attorneys rates between $275 and $400).  At the final approval stage, counsel must

21   address why the lodestar figures are reasonable and appropriate in this case.

22   IV.    CONCLUSION

23          The court GRANTS preliminary certification of the class, GRANTS preliminary

24   approval of the settlement, and GRANTS approval of the proposed notice to the putative class.

25          The court APPOINTS Charles Rodriguez representative of the class and Desai

26   Law Firm, P.C. as class counsel.

27   /////

28   /////

18

1    The court modifies the parties' stipulated schedule, ECF No. 36, and adopts the

2    following schedule in this case:

3            (1) Deadline for Defendant to submit class list to Claims Administrator: 10/3/2017

4            (2) Deadline for Claims Administrator to mail Class Notice: 10/15/2017

5            (3) Deadline for Class Members to postmark Objections or Requests for

6    Exclusion—timely Notice mailed: 11/14/2017

7            (4) Deadline for Class Members to postmark Objections or Requests for

8    Exclusion—remailed Notices: 11/27/2017

9            (5) Motion for Final Approval to be filed 12/29/2017

10           (6) Final Approval Hearing 1/26/2018

11           This order resolves ECF No. 27.

12           IT IS SO ORDERED.

13    DATED:  September 19, 2017.

14

15                                        _____
                                          UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28