1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHARLES RODRIGUEZ, individually          No. 2:14-cv-02061-KJM-CKD
     and on behalf of all similarly situated
12   current and former employees,

13               Plaintiff,                    ORDER

14        v.

15   PENSKE LOGISTICS, LLC, a Delaware
     Limited Liability company, and DOES 1
16   through 10, inclusive,

17               Defendants.

18

19

20          This matter is before the court on named plaintiff's unopposed motion for final

21   approval of class action settlement and for attorney's fees and costs.  ECF No. 41.  The court held

22   a hearing on the matter on January 26, 2018.  As explained below, the court GRANTS plaintiff's

23   motion.

24   I.     BACKGROUND

25          A.     Factual and Procedural Background

26                 Named plaintiff Charles Rodriguez worked for defendant Penske as a driver for

27   nearly fifteen years, during which he worked as a non-exempt employee, paid on a "by-the-mile"

28   or "piece rate" basis.  Prelim. Order at 2, ECF No. 40.

                                             1

Rodriguez asserts eight claims on behalf of the putative class: (1) failure to pay minimum wages, Cal. Lab. Code §§ 510, 1194; (2) failure to provide paid ten-minute rest periods, *id.* § 226.7; (3) failure to provide duty-free rest periods or compensation in lieu thereof, *id.* §§ 226.7, 512; (4) failure to provide duty-free meal periods or compensation in lieu thereof, *id.* §§ 226.7, 512; (5) knowing and intentional failure to provide itemized wage statements, *id.* § 226(a)–(b); (6) failure to pay wages at termination, *id.* §§ 201–203; (7) violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–08; and (8) violations of the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698, *et seq. See* Compl. *generally.*

In support of his claims, Rodriguez alleges Penske did not pay for pre- and post-trip inspections, and Penske's piece rate payment did not account for ten-minute rest breaks that should have been and were not compensated. Compl. ¶¶ 42–47. Rodriguez further alleges he was subject to policies that did not permit him to be relieved of all duties during break periods; was subject to an improper accounting policy; was not paid premium wages, or at least minimum wage, for non-compliant break periods; was provided inaccurate itemized wage statements for which the basis for pay and calculation could not be performed by a reasonable person; and was not timely paid all wages owed and due upon separation. Compl. ¶¶ 42–64.

Rodriguez filed his class action complaint in this court on September 5, 2014. In January 2015, the court issued an initial scheduling order, which created a cut-off for dispositive motions to be heard no later than June 16, 2016. ECF No. 20. After neither of the parties timely filed a dispositive motion, the court advanced the date of the final pretrial conference. ECF No. 21. The parties then asked for additional time in light of their pending negotiations, which the court granted. ECF Nos. 22–23. On October 3, 2016, the parties filed a joint notice of settlement. ECF No. 25.

B.    Preliminary Class Settlement Approval

Rodriguez filed an unopposed motion for preliminary approval of class settlement on November 16, 2016, ECF No. 27, and the court granted the motion preliminarily approving the settlement on September 19, 2017. ECF No. 40. The parties' stipulation to conditional

/////

2

certification of the class, coupled with the court's independent Rule 23 inquiry, led the court to conditionally certify the following class:

> All California-based non-exempt truck driver employees who worked under a 'piece rate' or 'pay-by-the-mile' compensation policy from September 5, 2010 through to the earlier of (a) Preliminary Approval of the Court or (b) November 1, 2016.

Prelim. Order at 2, 14.

The court's preliminary approval order identified concerns regarding attorney's fees that the court noted would need to be addressed prior to final approval. Specifically, the court noted "[a]t the final approval stage, plaintiff will have to justify this amount under a percentage-of-recovery theory or a lodestar method." Prelim. Order at 17. This concern is addressed below in the discussion of attorney's fees.

The court's other main concern at the preliminary approval stage was the newly enacted safe harbor provision for trucking companies under California's AB 1513. Prelim. Order at 16. This case is only properly understood in the context of the recent change in the law effected by AB 1513. The adoption of AB 1513 significantly reduced the value of the claims in this case because, as explained in the preliminary order, it reduces defendant's liability at defendant's unilateral option.[1] Prelim. Order at 3, 13–14, 16. That said, defendant would have to pay $755,272 to take advantage of the safe harbor's four-percent-of-reported-wages option for all class members. Desai Decl. ¶ 5, ECF No. 27-2. The incentives and disincentives resulting from the law's passage are discussed below.

C.    Key Terms of Settlement Agreement

Under the parties' settlement agreement, defendant agrees to pay a gross settlement amount ("GSA") of $850,000. Settlement Agreement, ECF No. 27-1. The GSA is

---

[1] As explained in the court's preliminary order, AB 1513's safe harbor provision creates an affirmative defense for employers. To use this defense, an employer must: make payments to current and former employees using either payment formula, Cal. Lab. Code § 226.2(b)(1), provide notice of payment to employees through the Department of Industrial Relations, *id.* § 226.2(b)(3), begin making payments "as soon as reasonably feasible" after notice is given and complete making payments by December 15, 2016, *id.* § 226.2(b)(4). Prelim. Order at 13–14.

3

inclusive of all individual class settlement payments, enhancement awards, settlement class counsel's fees and costs, PAGA penalty payments, taxes attendant to distributions, and all administration costs. Mot. for Final Approv. at 4, ECF No. 41. Upon approval, the GSA of $850,000 will be distributed as follows:

    1.    The total enhancement amount paid to named plaintiff will be $3,000;

    2.    The class administrator will receive $16,000;

    3.    The PAGA payment is $10,000, all of which is to be paid to the California Labor Workforce Development Agency as provided by California Labor Code § 2699(i);

    4.    Class Counsel will receive $265,000, or 31.2% of the GSA; and

    5.    The amount paid to class counsel for litigation expenses will be $900.69.

*Id*. at 1–2. After deducting these distributions from the GSA, the settlement amount available to putative class members will be $555,099.31 ($850,000 – $294,900.69). *Id*.

### D. Notice to and Response from Class Members

The putative class consists of 770 members. Schwartz Decl. ¶ 7, ECF No. 41-9. On October 17, 2017, the class administrator sent notice packets to all members listed. *Id*. ¶ 9. If a member's notice was returned as undeliverable and without a forwarding address, the administrator performed an advanced address search using the class member's name, previous address, and social security number to locate a current address. *Id*. ¶ 10. Through the advanced searches, the administrator located twenty-two updated addresses, to which it sent notice packets. *Id*. Ultimately, twenty-nine members' notices were undeliverable because the class administrator was unable to locate current addresses for them. *Id*. The class administrator received five opt-outs from the settlement, but no objections to the settlement. *Id*. ¶¶ 12–13.

## II. CLASS CERTIFICATION

Although the parties have stipulated to final certification of the class, the court must nevertheless undertake the Rule 23 inquiry independently. *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *1–2 (E.D. Cal. June 13, 2006) (citing, *inter alia*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622 (1997)). A party seeking to certify

a class must demonstrate the class meets the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *Amchem*, 521 U.S. at 614 (1997).

Under Rule 23(a), before finally certifying a class, the court must be satisfied that: (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement). *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011); Fed. R. Civ. P. 23(a).

Where, as here, Rodriguez seeks certification under Rule 23(b)(3), ECF No. 40, the court must find also that "'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy.'" *Wal–Mart Stores, Inc. v. Dukes* ("*Dukes*"), 564 U.S. 338, 362 (2011) (quoting Fed. R. Civ. P. 23(b)(3)). The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3)(A)–(D); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189–92 (9th Cir. 2001) (describing predominance and superiority requirements).

Here, Rodriguez seeks final certification of the same class identified preliminarily:

> All California-based non-exempt truck driver employees who worked under a 'piece rate' or 'pay-by-the-mile' compensation policy from September 5, 2010 through to the earlier of (a) Preliminary Approval of the Court or (b) November 1, 2016.

Mot. for Final Approv. at 5. For purposes of final approval, the court determines whether the class ultimately satisfies Rules 23(a) and 23(b).

A.   Numerosity

In its order granting preliminary approval, the court found the numerosity requirement satisfied because the parties agreed the putative class had 723 potential plaintiffs. Prelim. Order at 8.  Although there is no absolute numerical threshold for numerosity, courts have approved classes as small as, for example, thirty-nine, sixty-four, and seventy-one plaintiffs. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. Cty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982)).  The class here is now 796, larger than initially estimated, and is large enough to satisfy the numerosity requirement.  Settlement Agreement at 22.

B.   Commonality

In preliminarily approving the class, the court found the commonality requirement satisfied because there were common class issues and questions.  Prelim. Order at 10.

To satisfy the commonality requirement, plaintiff must do more than show "that [the class members] have all suffered a violation of the same provision of law."  *Dukes*, 564 U.S. at 350.  Class claims must depend upon a common contention and "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  It is not so much that the class raises common questions; what is necessary is "the capacity of a classwide proceeding to generate common answers."  *Id.* (internal quotation marks and citation omitted). "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

Here, the parties agree the class is subject to common compensation policies, and the court granted preliminary approval in this respect.  Mot. for Prelim. Approv. at 14, ECF No. 27; Prelim. Order at 10.  The issues raised continue to be based on common facts, the assessment of which will resolve the class's California Labor Code and unfair competition claims.  The court finds these common issues satisfy the commonality requirement.  *See Ching v. Siemens Indus., Inc.*, No. C. 11–4838 MEJ, 2013 WL 6200190, at *4 (N.D. Cal. Nov. 27, 2013) (finding

commonality requirement satisfied where "the issues facing the class ar[o]se from common questions involving [the] [d]efendant's calculation and payment of wages and overtime"); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010) (finding commonality requirement satisfied where plaintiffs identified "common factual questions, such as whether [the] [d]efendants' policies deprived the . . . class members of meal periods, rest periods, overtime pay, and reimbursement . . . and common legal questions, such as [the] [d]efendants' obligations under [various sections of the] California Labor Code and California's Unfair Competition law").

      C.      <u>Typicality</u>

In the preliminary order, the court found the typicality requirement satisfied because Rodriguez and each class member had suffered the same or similar injury. Prelim. Order at 11.

"'[T]he commonality and typicality requirements of Rule 23(a) tend to merge'" because both act "'as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Dukes*, 564 U.S. at 349 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). A court resolves the typicality inquiry by considering "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984 (internal quotation marks and citation omitted); *Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 WL 5511767, at *6.

Here, Rodriguez and each class member allegedly were employed in roughly the same position at roughly the same time and were subject to the same policies regarding compensation, meal and rest periods, and reimbursement for expenses. Prelim. Order at 11. No facts have surfaced since the court granted preliminary approval of the proposed class that would cause the court to alter its prior determination. Therefore, the court concludes the typicality inquiry is satisfied. *See Murillo*, 266 F.R.D. at 475 (plaintiffs satisfied typicality inquiry where they suffered similar injuries attributed to defendant's allegedly unlawful conduct).

D.      Adequacy of Representation

In the preliminary approval order, the court concluded Rodriguez adequately represents the class, while raising some questions to be addressed at this stage.  Prelim. Order at 9–10.

To determine whether the named plaintiff does in fact protect the interests of the class, the court must explore two factors: (1) whether the named plaintiff and counsel have any conflicts of interest with the class as a whole, and (2) whether the named plaintiff and counsel vigorously pursued the action on behalf of the class.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Clesceri v. Beach City Investigation & Protective Servs., Inc.*, No. CV-10–3873-JST (RZx), 2011 WL 320998, at *6 (C.D. Cal. Jan. 27, 2011) (quoting *True v. Am. Honda Motor Co.*, No. EDCV 07-287-VAP (OPx), 2009 WL 838284, at *5 (C.D. Cal. Mar. 25, 2009) ("(1) [T]he class representative must not have interests antagonistic to the unnamed class members, and (2) the representative must be able to prosecute the action 'vigorously through qualified counsel.'").

With respect to the first factor, nothing in the record now before the court suggests the representative plaintiff or counsel have any conflicts of interest with the other class members.  Because plaintiff's class-wide claims appear to be "completely aligned with those of the class," *Collins*, 274 F.R.D. at 301, the court concludes there is no basis for finding a conflict.

With respect to the second factor, "[a]lthough there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon*, 150 F.3d at 1021.  In addition, a named plaintiff will be deemed adequate "[a]s long as the plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon [the plaintiff's] lawyers' advice." *Kaplan v. Pomerantz*, 131 F.R.D. 118, 121–22 (N.D. Ill. 1990).

In the preliminary order, the court addressed the second factor and whether Rodriguez has vigorously pursued the action.  Prelim. Order at 9.  The court noted the docket of the case was sparse, and Rodriguez did not file any discovery-related or dispositive motions.

8

Prelim. Order at 9.  In its preliminary approval motion, class counsel explained that the sparsity of the record and relative inactivity of the case was due to the pendency and then passage of AB 1513.  Mot. for Prelim Approv. at 6–7; Prelim. Order at 9.  Ultimately, because of the "unique backdrop" created by the impact of AB 1513, the court found the second factor satisfied and was persuaded that Rodriguez and class counsel would likely adequately protect the interests of the class.  Prelim. Order at 9–10.

Nothing in the case causes the court to reconsider its preliminary determination.  Accordingly, the court finds the adequacy of representation requirement satisfied.

E. <u>Predominance</u>

In the preliminary approval order, the court concluded plaintiff met the predominance requirement because common questions relating to the lawfulness of defendant's policies were a significant aspect of the case.  Prelim. Order at 12.  Here as well, that preliminary conclusion holds.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Although predominance is similar to Rule 23(a)'s commonality requirement, it is more demanding.  *Id.* at 623–24.  To determine whether common questions predominate, the court must consider "the relationship between the common and individual issues" by looking at the questions that pre-exist any settlement.  *Hanlon*, 150 F.3d at 1022.  Additionally, the predominance inquiry focuses on the "notion that the adjudication of common issues will help achieve judicial economy."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (internal quotation marks and citation omitted).

In the preliminary order, the court identified several aspects of the impact of AB 1513 that could potentially destroy the predominance of common issues.  Prelim. Order at 11.  Its primary concern was the difference in the class period and the safe harbor period and whether those outside the safe harbor period should be compensated differently.  Prelim. Order at 11–12.  After hearing further explanation from plaintiff's counsel on the effect of AB 1513 on the class, the court was persuaded for preliminary approval purposes that the differences did not undermine

the predominance of common issues. Prelim. Order at 12. Thus, the calculation of individual damages was the only individualized inquiry that may arise, and "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

Here, notwithstanding AB 1513, resolving the issues on a class basis promotes judicial economy. The predominance requirement is satisfied.

F.      Superiority

As it did in the preliminary approval order, the court finds here that Rodriguez satisfied the superiority requirement because of the burden otherwise placed on the parties and the courts by the bringing of multiple individual suits touching on the same or similar issues. Prelim. Order at 13–14.

In ultimately resolving Rule 23(b)(3)'s superiority inquiry, the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating the litigation in one forum, and potential difficulties in managing the class action, although the last two considerations are not relevant in the settlement context. *Schiller v. David's Bridal, Inc.*, No. 1:10-cv–00616-AWI-SKO, 2012 WL 2117001, at *9–10 (E.D. Cal. June 11, 2012) ("In the context of settlement, however, the third and fourth factors are rendered moot and are not relevant . . . because the point is that there will be no trial . . . ." (citing *Amchem*, 521 U.S. at 620)).

As in the preliminary approval order, the court concludes here that if all 796 class members each brought suit, they would bring essentially the same claims for relatively small sums and likely would have to expend substantial resources to cover litigation costs. If defendant took advantage of the AB 1513 safe harbor provision for all California drivers, it would pay $775,272, Desai Decl. ¶ 5, which means each putative class member would receive an average payment of just over $1,000, an amount too small to incentivize individual litigation. Prelim. Order at 13. Because, as explained below, the average claim value under the terms of the proposed settlement is $715.03, class members could have a chance at a greater recovery under

10

AB 1513. Nevertheless, the court is persuaded that class treatment for this action is superior. Class members stand to receive more in this action than under the safe harbor, and the proposed settlement agreement offers an economic adjudication of the class members' claims that avoids duplication of efforts and resources. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."). The proposed settlement agreement also offers guaranteed recovery to class members without additional complication or the uncertainty of further litigation.

The class action here is thus the superior means of litigating plaintiff's claims.

G.    Conclusion

In sum, the court finds plaintiff satisfies Rules 23(a) and 23(b), and final approval of the class is appropriate.

III.    THE SETTLEMENT AND FAIRNESS

A.    Legal Framework

When parties settle a class action, a court cannot simply accept the proposed resolution; rather it must also satisfy itself that the proposed settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. After preliminary certification and notice to the class, as here, a court conducts a fairness hearing before finally approving any proposed settlement. *Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1267 (9th Cir. 2010); Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate . . . ."). A court must balance a number of factors in determining whether a proposed settlement is in fact fair, adequate, and reasonable: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

11

*Hanlon*, 150 F.3d at 1026; *Adoma v. Univ. of Phx.*, 913 F. Supp. 2d 964, 974–75 (E.D. Cal. 2012). The list is not exhaustive, and the factors may be applied differently in different circumstances. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

The court must consider the settlement as a whole, rather than its component parts; the settlement "must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026; *but see In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1189 n.5 (9th Cir. 2013) (in concluding the proper amount of attorney's fees, the agreement as a whole need not stand or fall on that amount). Ultimately, the court must reach "a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

### 1. The Strength of Plaintiff's Case

When assessing the strength of plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of [the] litigation." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). This is so because evidence has not been fully presented and "settlements [are] induced in large part by the very uncertainty as to what the outcome would be, had litigation continued." *Id.* Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

While defendant denies committing any illegal or wrongful acts, all parties agree further litigation would be protracted and expensive. Mot. for Prelim. Approv. at 3–4. This agreement that the litigation is not capable of speedy disposition suggests the strength of plaintiff's claims. That the parties reached the proposed settlement after exchanging information through discovery and several months of arm's-length negotiation further supports the strength of plaintiff's case on the issues of liability and class certification. Mot. for Prelim. Approv. at 2–3. Because the settlement achieves full and immediate compensation to class members who have a substantial likelihood of prevailing on the merits, this factor favors approving the settlement.

2.      The Risk of Further Litigation and Maintaining Class Status

"Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'" *Morales*, 2011 WL 5511767 at *10 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)). The Ninth Circuit has explained "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "'[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .'" *Id.* (quoting *Officers for Justice*, 688 F.2d at 625).

Here, the parties have reached a reasonable voluntary agreement that will provide class members with immediate substantial relief while avoiding delays in continued litigation, which could be prolonged and expensive. While this wage and hour class action is not particularly complex, the certain amount offered in settlement likely renders an equally or more favorable result than at trial, especially considering the newness and uncertainty surrounding AB 1513. This factor favors approval.

3.      The Amount Offered in Settlement

The proposed settlement is not to be judged against "a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625; *see also Collins*, 274 F.R.D. at 302 (a court must "'consider plaintiffs' expected recovery balanced against the value of the settlement offer'" (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007))).

Based on the parties' settlement agreement, the class administrator calculated the average claim value to be $715.03. Schwartz Decl. ¶ 15. The range of payments is estimated to be $1.11 to $2,556.25. Schwartz Decl. ¶ 15. The class members will be given their back wages, which plaintiff describes as "the 'gold standard' for wage and hour class action settlements because it imposes almost no burden on the employee while distributing virtually all of the

1  [s]ettlement [f]und." Mot. for Final Approv. at 1.  On balance, without blessing the "gold

2  standard" characterization, the court finds this factor favors approval.

3         4.     The Extent of Discovery and the Stage of Proceedings

4              "In the context of class action settlements, 'formal discovery is not a necessary

5  ticket to the bargaining table' where the parties have sufficient information to make an informed

6  decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.

7  1998) (quoting *In re Chicken Antitrust Litig.,* 669 F.2d 228, 241 (5th Cir. 1982)).

8              Plaintiff's counsel represents that the parties engaged in extensive investigation

9  and made repeated efforts to resolve the case.  Mot. for Final Approv. at 10; Ex. B to Desai Decl.

10  for Attorney's Fees, ECF 41-3.  As explained above, while the record on this case is sparse and

11  Rodriguez did not file any discovery-related motions, his counsel has explained that is due to the

12  pendency and then passage of AB 1513.  Mot. for Prelim. Approv. at 6–7.

13              The court is satisfied the formal and informal discovery that was conducted was

14  sufficient to inform plaintiff's assessment of the case, and that it enabled the parties to reach a

15  meaningful settlement agreement.  This factor favors approval.

16         5.     The Experience and Views of Counsel

17              In considering the adequacy of the terms of settlement, the court is entitled to, and

18  should, rely upon the judgment of experienced counsel for the parties.  *See DIRECTV, Inc.*,

19  221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most

20  closely acquainted with the facts of the underlying litigation.") (internal quotation marks and

21  citations omitted).  This reliance is warranted because "[p]arties represented by competent

22  counsel are better positioned than courts to produce a settlement that fairly reflects each party's

23  expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

24  1995).

25              Here, class counsel Aashish Desai is an experienced practitioner who has

26  successfully litigated many similar cases.  Desai Decl. ¶ 5.  In addition to the numerous class

27  actions counsel has litigated, he has also written extensively on California overtime class actions

28  and has been awarded multiple honors for his work in class action litigation.  Desai Decl. ¶¶ 11–

14

13.  Based on this experience, class counsel believe the settlement is fair and should be approved. Desai Decl. ¶¶ 7–8.

This factor favors approval.  *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (because of experience, "[c]lass [c]ounsel understood the complex risks and benefits of any settlement and concluded that the proposed Settlement was a reasonable recovery").

### 6.     The Reaction of the Class Members to Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529.  Where there are no objections, as here, the presumption is particularly strong. *Lo v. Oxnard European Motors*, LLC, No. 11-cv-1009 JLS (MDD), 2012 WL 1932283, at *2 (S.D. Cal. May 29, 2012) (noting "the fairness of the terms of the settlement is bolstered by the fact that no objections were made").

Here, while five class members out of 796, or just over 0.6%, opted out of the settlement, there were no objections to the proposed settlement agreement.  Schwartz Decl. ¶¶ 12–13.  This factor weighs in favor of approving the settlement.

### 7.     Conclusion

All of the relevant factors reviewed above weigh in favor of approval of settlement. The court proceeds to determine whether collusion has occurred.

### B.     The Possibility of Collusion

Where the parties negotiate a settlement agreement before formal class certification, as in the instant case, the court must evaluate the settlement for evidence of collusion with a "higher level of scrutiny." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947.

A few such signs may include: (1) a disproportionate distribution of the settlement to counsel; (2) a "clear-sailing" provision, under which the defendant agrees not to oppose an attorney's fee award up to a certain amount, *id.*; and (3) when the parties arrange for fees not paid to revert to defendant rather than to be added to the class fund, *id.*

Here, class counsel seeks $265,000.00, or 31.2% of the GSA. Mot. for Final Approv. at 1. In the preliminary order, the court noted because the proposed fee award is above the percentage-of-recovery "benchmark" rate of 25%, plaintiff would need to show why this upward adjustment is appropriate at this final approval stage. Prelim. Order at 18. As explained below, the record now before the court bolsters counsel's claim for a 31.2% share. Class counsel took the case on a contingency-fee basis without compensation and risked losing on the merits if the case proceeded to trial. Mot. for Final Approv. at 18–19. Despite this, and as explained in more detail below, class counsel obtained a favorable settlement relatively early, all things considered, in the face of the uncertainty raised by AB 1513 and the safe harbor it provides for trucking companies. Mot. for Final Approv. at 18. Additionally, the 31.2% rate is not disproportionate and is within the Ninth Circuit's range of acceptable percentages. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming attorney's fees comprising 33% of the common fund when justified by the complexity of the issues and the risks undertaken by counsel). This factor favors finding no collusion.

As to the second sign, because attorney's fees will be paid from the settlement fund, this concern is ameliorated. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009) (collusion generally inferred from a "clear-sailing" provision where attorney's fees are paid on top of the settlement fund). This factor favors finding no collusion.

As to the third sign, the settlement does not incorporate an agreement for unpaid funds to revert back to defendant, but rather provides that any such funds will revert to the LWDA. Settlement Agreement at 21. This factor favors finding no collusion.

No evidence of collusion stands in the way of approving the settlement.

C.      Attorney's Fees, Costs, and Incentive Award

       1.      Request for Attorney's Fees

Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Even when the parties have agreed on an amount, the court must award only reasonable attorney's fees. *Bluetooth*, 654 F.3d at 941. In diversity actions such as this one, the Ninth Circuit "has applied state law in determining not only the right to fees, but also in the method of calculating fees." *Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (1995); *Rodriguez v. Disner*, 688 F.3d 645, 653 n.6 (9th Cir. 2012); *Schiller*, 2012 WL 2117001, at *15 ("In diversity actions such as this, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees."). The California Supreme Court has held that, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund." *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977). California courts employ both the percentage-based method and the lodestar method for calculating attorney's fees in common fund actions. *See Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). A California appellate court recently stated the goal "is the award of a 'reasonable' fee to compensate counsel for their efforts, irrespective of the method of calculation. It is not an abuse of discretion to choose one method over another as long as the method chosen is applied consistently using percentage figures that accurately reflect the marketplace." *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557–58 (2009) (internal quotation marks and citations omitted).

California courts have not prescribed one set of factors to evaluate the reasonableness of the percentage-based fees requested in common fund settlements, but the courts have noted the goal is to assess the requested fees' reasonableness. *Id*. at 557. The California courts have used certain factors in calculating a lodestar multiplier that are similar to those considered by federal courts in weighing the reasonableness of a percentage-based attorney's fees award. *Schiller*, 2012 WL 2117001, at *16.

In the Ninth Circuit, as noted above, the benchmark for percentage-of-recovery awards is 25 percent of the total settlement award, which may be adjusted up or down. *Hanlon*, 150 F.3d at 1029; *Ross v. U.S. Nat'l Bank Ass'n*, No. C 07–02951, 2010 WL 3833922, at *2 (N.D. Cal. Sept. 29, 2010). Factors that may justify departure from the benchmark include: (1) the result obtained; (2) the risk involved in the litigation; (3) the contingent nature of the fee; (4) counsel's efforts, experience, and skill; and (5) awards made in similar cases. *Vizcaino v. Microsoft Corp.* (*Vizcaino II*), 290 F.3d 1043, 1048–49 (9th Cir. 2002). The court considers the reasonableness of the percentage requested in light of the Ninth Circuit factors, with the 25 percent benchmark as a starting point. *Schiller*, 2012 WL 2117001, at *17.

### a. The Results Achieved

As recounted above, class counsel obtained a favorable result in the form of early settlement and adequately proportionate awards. In a common fund case, "the size of the recovery constitutes a suitable measure of the attorneys' performance." *Vizcaino v. Microsoft Corp.* (*Vizcaino I*), 142 F. Supp. 2d 1299, 1303 (W.D. Wash. 2001) (internal quotation marks omitted). The settlement agreement here establishes a gross amount of $850,000 to compensate members for missed rest and meal breaks as well as inadequate wage statements and failure to pay minimum wage. Prelim. Order at 2. The common fund constitutes substantial relief in this case, because, as class counsel explained, "the safe harbor provision under AB 1513 gutt[ed] this case, considerably," Desai Decl. ¶ 8, and as noted preliminarily, defendant's vigorous advocacy may have compromised class certification and plaintiff's success on the merits. Prelim. Order at 16. The absence of objections from class members also signals the favorable nature of the result.

### b. The Risks Involved

The case became particularly risky for plaintiffs once the safe harbor provision of AB 1513 was enacted. Courts have recognized that a high risk factor is one reason for increasing class counsel's attorney's fee award above the "benchmark" 25% fee. *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (33% of the common fund as attorney's fees justified based on complexity of issues and attendant risks).

///

c. <u>The Contingent Nature of the Representation</u>

As noted above, class counsel took this case on a contingency-fee basis without compensation, bearing the entire cost of litigation for approximately three years. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (percentage above 25% benchmark justified where counsel took case on contingency basis for approximately two years).

d. <u>Skill Required and Quality of Work Performed</u>

Class counsel brought significant experience with wage and hour class actions to the bargaining table to achieve a favorable outcome. Desai Decl. ¶¶ 9–13. Counsel has extensive experience acting as class counsel in complex class action cases, including wage and hour class actions, and has written several articles on California overtime and collective actions. *Id.* ¶¶ 9–13. Class counsel's ability to provide class members with real and immediate monetary relief, given the complexity and potential duration of the case and combined with the presence of the affirmative defense provided by AB 1513, supports the reasonableness of a 31.2% award. *See Williams v. Centerplate, Inc.*, Nos. 11-cv-2159 H-KSC, 12-cv-0008-H-KSC, 2013 WL 4525428, at *7 (percentage above 25% benchmark justified where experienced counsel obtained substantial award for class members through arm's-length settlement negotiations despite complexity of case and risk of outcome of future litigation).

e. <u>Awards Made in Similar Cases</u>

The requested percentage is similar to percentage-based awards obtained through settlement in other wage-and-hour actions in this district:

(1)   *Bond v. Ferguson Enterprises, Inc.*, No. 1:09–cv–01662–OWW–MJS, Docket No. 59 (E.D. Cal. June 30, 2011) (court approved attorney's fees in the amount of 30% of the common fund);

(2)   *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) (wage-and-hour action putative class-action settlement where court approved award of attorney's fees in the amount of 33.3% of the common fund);

(3)   *Benitez v. Wilbur*, No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) (awarding 33.3% of the benefit to the class in attorney's fees);

(4)   *Chavez v. Petrissans*, (Case No. 1:08–cv–00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) (court approved awards of attorney's fees of 33.3% of the common fund);

(5)   *Romero v. Producers Dairy Foods, Inc*., No. 1:05–cv–0484–DLB, 2007 WL 3492841, at * 4 (E.D. Cal. Nov.14, 2007) (class action settlement where court approved attorney's fees in the amount of 33% of common fund);

(6)   *Vasquez v. Jim Aartman, Inc*., No. 1:02–cv–05624–AWI–LJO, Doc. No. 130 (E.D. Cal. Sept. 16, 2005 (class action settlement where court approved attorney's fees in the amount of 30% of the settlement amount);

(7)   *Baganha v. Cal. Milk Transp.*, No. 1:01–cv–05729–AWI–LJO, Doc. No. 147 (E.D. Cal. July 22, 2004) (class action settlement where court approved attorney's fees in the amount of 31.25% of settlement amount);

(8)   *Randall Willis et al. v. Cal. Western Transp.* and *Earl Baron, et al. v. Cal Western Transp.* (consolidated cases), No. 1:00–cv–05695–AWI–LJO, Doc. No. 225 (E.D. Cal. Aug. 20, 2003) (court approved attorney's fees in the amount of 33.3% of the settlement amount); and

(9)   *Schiller*, 2012 WL 2117001, at *19 (court approved attorney's fees in the amount of approximately 32% of total settlement amount).

The requested percentage award is reasonable and warranted in this case, and the court grants the request for attorney's fees in the amount of $265,000.00, which represents approximately 31.2 percent of the common fund.

### f.   Lodestar Cross-Check

Comparison with the lodestar method also supports approving the settlement.  In cases where courts apply the percentage method to calculate attorney's fees, courts are encouraged to use the lodestar method as a cross-check to evaluate the reasonableness of the percentage award.  *See Bluetooth*, 654 F.3d at 944–45.  In calculating an attorney's fees award under this method, a court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as "the quality of representation, the benefit obtained

20

for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."
*Bluetooth*, 654 F.3d at 942 (quoting *Hanlon*, 150 F.3d at 1029). "Foremost among these considerations, however, is the benefit obtained for the class." *Id.* at 942 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)). When a court uses the lodestar as a cross-check to a percentage award, it need only make a "rough calculation." *Schiller*, 2012 WL 2117001, at *22.

Class counsel represent that the lodestar amount, based on 400 hours worked at hourly rates of $750.00 for Aashish Desai (348.40 hours), who has over twenty years' experience, $450.00 for Adrianne De Castro (16.50 hours), who has thirteen years' experience, and $250.00 for paralegal Sonia Nava (34.95 hours), is $277,462.50. Desai Decl. for Attorney's Fees ¶¶ 5–6, ECF No. 41-1; Ex. B to Desai Decl. for Attorney's Fees. Class counsel's rates of $750 per hour for Aashish Desai and $250 per hour for paralegals appear to be outside the range of acceptable fees in the Eastern District of California, as this court has reviewed in relatively recent decisions. *See, e.g.*, *Ogbuehi v. Comcast of Cal./Colo./Fla./ Or., Inc.*, No. 2:13-cv-00672-KJM-KJN, 2015 WL 3622999, at *12 (E.D. Cal. June 9, 2015) (calculating lodestar amount using hourly rates of $650 for an attorney with nineteen years' experience, $175 for a paralegal with six years' experience, and $150 for a paralegal with two years' experience); *Zakskorn v. Am. Honda Motor Co.*, No. 2:11-cv-02610-KJM-KJN, 2015 WL 3622990, at *15 n.4 (E.D. Cal. June 9, 2015) (calculating lodestar amount using hourly rates of $540–$695 for partners, $300–$490 for associates, and $180 for paralegals and multiplying by individual attorney's hours as represented in their respective declarations)).

Accordingly, the court adjusts the hourly rates downward for the purposes of conducting the lodestar cross-check. The lodestar amount, calculated using a range of $540 to $695 per hour for Aashish Desai, $450 per hour for Adrianne De Castro, and $150 to $180 per hour for paralegals as the prevailing local rate, produces a range of $200,803.50 to $255,854.00. Taking the lower end of this lodestar range, to reach class counsel's total requested fee of $265,000 requires applying a multiplier of 1.32 to the lodestar amount of $200,803.50. A multiplier of 1.32 is well within the range of multipliers accepted by the Ninth Circuit. *See, e.g.*,

*Vizcaino II*, 290 F.3d at 1050–51, 1051 n.6 (reviewing approved fees from twenty-four cases and finding twenty of twenty-four fell within the 1.0–4.0 range, and thirteen of twenty-four fell within the 1.5–3.0 range).  The court evaluates the factors discussed in *Bluetooth* to determine whether a 1.32 lodestar multiplier is justified in this case.

First, class counsel avoided protracted litigation by investigating the class claims and effectively communicating and exchanging information with defense counsel so that the parties could successfully negotiate a settlement.  Additionally, class counsel navigated the potential complications posed by AB 1513.  This factor supports a modest, positive multiplier.

Second, class counsel achieved a favorable result and generated a significant benefit for the class amounting to a gross settlement amount of $850,000.  Participating class members stand to receive an average award of $715.03, a substantial benefit given the safe harbor provision under AB 1513.  Class counsel can also point to the fact that they have received few opt outs as further support.  This factor favors a positive multiplier.

Third, class counsel are experienced litigators in the employment context, and the issues presented by plaintiff's claims are not novel to them.  The presence of AB 1513's affirmative defense, however, required additional investigation and negotiation.  This factor favors a small, positive multiplier.

Finally, class counsel have represented the class on a contingency basis.  Consequently, class counsel faced a substantial risk of nonpayment, especially given the uncertainty of litigation following the enactment of AB 1513.  Although it is difficult to evaluate plaintiff's likelihood of success, the risk of nonpayment appears substantial.  This factor favors a positive multiplier.

Each of these factors favors a positive multiplier, and the multiplier of 1.32 is within the range accepted by the Ninth Circuit.  Accordingly, based on the percentage-based method and the lodestar cross-check method, the requested award of fees is reasonable.

2.     <u>Request for Costs</u>

The court also must determine an appropriate award of costs and expenses.  Fed. R. Civ. P. 23(h).  "[I]n evaluating the reasonableness of costs, the judge has to step in and

play surrogate client." *Ross v. Bar None Enters., Inc.*, No. 2:13-cv-00234, 2015 WL 1046117, at *11 (E.D. Cal. Mar. 10, 2015) (internal quotation marks and citation omitted). "In keeping with this role, the court must examine prevailing rates and practices in the legal marketplace to assess the reasonableness of the costs sought." *Id.* (internal quotation marks and citation omitted).

Here, class counsel aver the combined unreimbursed costs total $900.69, which include court filing fees, mediator's fees, and travel. Mot. for Final Approv. at 21. Upon the court's inquiry, class counsel clarified no formal mediation occurred and their claimed costs do not include any mediator's fees. Therefore, the court finds the costs requested to be reasonable. *See Barbosa*, 297 F.R.D. at 454 (costs associated with travel and photocopying as well as mediation fees are "routinely reimbursed"); *Fontes v. Heritage Operating, L.P.*, No. 14-cv-1413-MMA (NLS), 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016) (approving class counsel's costs, which included "court filing fees, research costs, mediation-related expenses, attorney services costs, and travel expenses").

### 3. Incentive Award

Rodriguez requests an individual incentive award of $3,000. Mot. for Final Approv. at 6. Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, [as here,] to recognize their willingness to act as a private attorney general." *W. Publ'g Corp.*, 563 F.3d at 958–59. While such awards are fairly typical in class action cases, *id.* at 958, the decision to approve such an award is within the court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).

In determining whether to approve an incentive award, courts may consider the following factors: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

1       With respect to the first factor, plaintiff contends by initiating this case he

2   shouldered a degree of personal risk, including compromising a career in plaintiff's field of work,

3   reduced earning potential, and financial liability if defendant prevailed.  Rodriguez Decl. ¶ 2,

4   ECF No. 27-3.  The first factor weighs in favor of granting an incentive award.

5       With respect to the second factor, nothing in the record suggests the litigation

6   gained any particular notoriety.  This factor thus does not cut either way.

7       With respect to the third factor, Rodriguez states he spent several hours searching

8   for documents related to his Penske employment.  Rodriguez Decl. ¶ 7.  Additionally, he spent a

9   significant amount of time on the phone with his attorneys discussing the case.  Rodriguez Decl.

10  ¶ 8.  Because plaintiff expended significant efforts and was involved in the litigation, this factor

11  weighs in favor of granting him an incentive award.

12      With respect to the fourth factor, this case was not particularly protracted

13  considering the non-litigation delays occasioned by AB 1513.  Rodriguez initiated the case on

14  September 5, 2014, settled on October 27, 2016, and requested preliminary approval on

15  November 16, 2016.  Compl., ECF No. 1; Settlement Agreement, ECF No. 27-3.  The fourth

16  factor is neutral.  *Cf. Van Vranken*, 901 F. Supp. at 299 (where the class representative's

17  "participation lasted through [over thirteen] years of litigation," an incentive award was

18  appropriate); *see also Ogbuehi*, 2015 WL 3622999, at *14 (citing *Van Vranken* for proposition

19  that when duration of litigation is not protracted, the fourth factor is neutral).

20      Finally, with respect to the fifth factor, the personal benefit enjoyed by plaintiff,

21  under the class settlement agreement, Rodriguez will not gain any benefit beyond what he will

22  gain as a class member.  *See generally* Rodriguez Decl.; *see also In re Toys R Us-Del., Inc.—Fair*

23  *& Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) ("An

24  incentive award may be appropriate when a class representative will not gain any benefit beyond

25  that he would receive as an ordinary class member.").  This factor weighs in favor of granting an

26  incentive award.

27      On balance, the relevant factors favor granting an incentive award.  The court

28  reviews the requested incentive award of $3,000, which is below the amount typically deemed

reasonable. *See, e.g.*, *In re Mego Fin. Corp.*, 213 F.3d at 463 (approving $5,000 incentive award); *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838, 2014 WL 2926210, at *9 (N.D. Cal. June 27, 2014) (approving $5,000 incentive award and noting that in the Northern District, "a $5,000 incentive award is presumptively reasonable"); *see also FACTA*, 295 F.R.D. at 470 (approving $5,000 incentive award).  Additionally, no party contends the requested incentive award would create a disparity between named plaintiff and the rest of the class.  This weighs in favor of rewarding the amount requested.

        4.    <u>Claims and Administrator Fee</u>

        Plaintiff also requests the court approve administrative costs in the amount of $16,000, to be paid to the third-party class administrator.  Mot. for Final Approv. at 2.  The administrator's responsibilities included handling 770 claims.  Schwartz Decl. ¶ 9.  The parties have shown the administrative cost is warranted here, as the class administrator prepared and mailed notice to class members, tracked opt-out requests and objections, and mailed individual settlement amounts to class members.  Schwartz Decl. ¶¶ 3–15.  It also is in line with the costs approved in other similar cases.  *See Ching*, 2014 WL 2926210, at *2 (approving an estimated $15,000 claims administrator fee for sixty-eight claims); *Chu v. Wells Fargo Invs., LLC*, No. C-05–4526-MHP, 2011 WL 672645, at *6 (N.D. Cal. Feb. 16, 2011) (granting $40,528.08 in costs associated with administration of case with 1,320 class members and $6,900,000 settlement amount).  The fee is approved.

IV.    <u>CONCLUSION</u>

        For the foregoing reasons, the court orders as follows:

    1.    The court GRANTS final approval of the settlement.

    2.    The court AWARDS the class counsel attorney's fees of $265,000.00.

    3.    The court AWARDS the class counsel reimbursement of costs in the amount of $900.69.

    4.    The court AWARDS an incentive payment to Rodriguez of $3,000.00.

    5.    The parties and the settlement administrator shall perform their respective obligations under the terms of the settlement agreement.

25

6. In accordance with the parties' stipulation at hearing, the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: January 17, 2019.

_____
UNITED STATES DISTRICT JUDGE